## CRONACHER v FLORIDA DEPARTMENT OF REVENUE
### Case No. 85-20512-CA-17
Sixteenth Judicial Circuit, Monroe County

October 7, 1986

### APPEARANCES OF COUNSEL
**Captain Edward R. Fink** for plaintiff.
**Edwin A. Bayo** for defendant.

### OPINION OF THE COURT

RICHARD G. PAYNE, Acting Circuit Judge.

Plaintiff contests the legality of a certain State sales/use tax assessment, penalty and interest imposed upon the purchase of a yacht.

### *JURISDICTION*

This Court has subject matter jurisdiction under the provisions of F.S. 72.011.

146

## THE FACTS

On May 3, 1984 plaintiff, ROY W. CRONACHER, JR., executed a Brokerage Purchase and Sales Agreement to purchase a 55' yacht named "JAMAPA" then owned by Blackwood Corporation, Ltd., a British Virgin Island corporation, for a selling price of $230,000. The vessel was then situated in Ft. Lauderdale, Florida at the place of business of Richard Bertram and Company, a Florida Yacht broker.

On June 29, 1984 the sale was consummated at the brokerage by the parties executing several documents, one of which was a Buyer's Closing Statement prepared by the yacht broker which listed the buyer to be So Free, Inc., c/o Tunnel & Rayson, Tunnel Building, So. Pine and East Race Street, Suite 151, Georgetown, Delaware 19447. Attendant to the sale plaintiff, in his own capacity, executed two additional documents executed for the purpose of exempting the transaction from Florida sales tax. The Sales Tax Indemnification Agreement recited that the dealer had the responsibility of collecting Florida sales tax due and that the buyer had informed the dealer that the vessel will be removed from the State of Florida immediately after purchase and that, as such, the vessel would be eligible for a sales tax exemption in Florida and that therefore the buyer agrees to furnish the dealer with documentation that it would register the vessel and hold the dealer harmless from damages should the buyer fail to comply with the Florida exemption requirements. The second document signed by the plaintiff, as purchaser, consisted of an affidavit wherein the purchaser agreed that the vessel would be removed from Florida within 10 days of its repair or alteration in compliance with Florida Statute 212.05.

Sometime after the purchase the vessel was renamed the "SO FREE" and was documented (registered) with the United States Coast Guard.

After the purchase the vessel was kept at Bertram & Company until the vessel could be surveyed and insurance obtained covering the use of the vessel. On July 20, 1984 plaintiff sailed the vessel to the Bahama Islands. On July 23, 1984 plaintiff returned to Florida with the vessel and docked at his waterfront home at Ocean Reed for approximately two weeks until it could be taken to Bertram & Company's yard in Ft. Lauderdale, Florida for repair and alterations. At this time approximately $70,000 worth of repairs and/or alterations were done to the vessel for which sales tax was paid. The vessel was a used vessel and none of the work performed was warranty work or was emergency repairs but plaintiff preferred to have the work done at Bertram as Bertram was the original manufacturer of the vessel.

147

After the repairs were completed the vessel was sailed to the Bahama Islands where it cruised the islands for two months after which the "So Free" was returned to plaintiff's home in the Florida Keys on December of 1984. Therefore, the "So Free" remained in use using Ocean Reef as port until early spring of 1985 when Plaintiff sailed the vessel to the Bahama Islands where it stayed for four or five months.

On September 19, 1985 the State of Florida, Department of Revenue, notified plaintiff that a Sales/Use Tax penalty and interest totalling $27,600 had been assessed against plaintiff as a result of the June 29, 1984 transaction.

Plaintiff seeks a declaratory judgment that the assessment of tax is invalid for the reason that plaintiff purchased the vessel as an officer of "So Free, Inc." and not in his personal capacity. Additionally, plaintiff contends that the sale involved was an occasional or isolated sale which is not subject to sales tax and that the occasional and isolated sales tax exemption is not forfeited if the sale is being made through a broker. Plaintiff also contends that the specific tax on occasional or isolated sales of boats does not apply to the sale in question because the vessel is not required to be registered, licensed or titled in this state or by the United States Government but, rather, is a vessel eligible for but not required to be documented by the United States Government and, lastly, the vessel in question is exempt by Florida law from the requirement that the vessel be numbered under Florida's numbering provisions and is granted reciprocity under Florida Statute 327.16.

## HOLDING OF THE COURT

### The Corporation

The first issue is the propriety of assessing the tax against plaintiff as opposed to the corporation, So Free, Inc.

As a general rule of law, officers, directors and stockholders when acting in a representative capacity incur no personal liability. This veil of protection cannot be pierced without a showing that the corporation is the alter ego of the stockholders and was organized or employed for fraudulent or misleading purposes, corporate property has been converted or depleted for the personal benefit of the individual stockholders or property belonging to the corporation can be traced into the hands of the stockholders. *Advertecs Inc. v. Sawyer Industries*, 84 So.2d 21 (Fla. 1955) and *Computer Center, Inc. v. Vedapco, Inc.*, 320 So.2d 404 (Fla. 4th DCA 1975) cert. den 333 So.2d 465.

The corporation So Free, Inc. was chartered in the State of Delaware sometime prior to June 29, 1984.

148

The corporation does no business and owns no other asset other than the yacht "So Free". The corporation has no bank account and all repairs for the vessel have been paid by plaintiff personally. Plaintiff is the president and majority stockholder of the corporation and the only other stockholder is plaintiff's six-year old daughter. Other than the original incorporation few, if any, corporate formalities have been observed. Plaintiff indicated in his deposition that he was not sure of when the corporation was formed or how many shares of stock were owned by his daughter. Plaintiff purchased the yacht individually and there has been no document submitted to the Court showing the assignment of the vessel to the corporation. The record is also silent as regards any corporate meetings or corporate resolutions allowing the plaintiff the personal use of the yacht. Significantly, plaintiff signed the removal affidavit as well as the sales tax indemnification agreement individually and not in a representative capacity.

The Court was advised that the hailing port for the vessel is Georgetown, Delaware, a State which does not impose an excise tax on the sale or use of a vessel. Plaintiff is a Florida resident as is plaintiff's daughter. There is no evidence since plaintiff's purchase that the subject vessel has been sailed other than between the Bahama Islands and Florida. There is no evidence that it has ever been to its hailing port or to its home port of Philadelphia.

In *Barnes v. Liebig*, 1 So. 2d 147 (1941), the Florida Supreme Court held that the corporate veil may be pierced if the corporation was formed to circumvent the law.

Under the totality of the facts recited the Court finds that the assessment, if otherwise valid, would be properly assessed against plaintiff, Roy W. Cronacher, Jr., individually as plaintiff alone enjoys the absolute dominion, use and control of the sole asset of the corporation and he is the true owner of the pleasure vessel.

### The Statute [Relevant Portions]

"212.05 Sales, storage, use tax. — It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engaged in the business of selling tangible personal property at retail in this state, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state.

(1) For the exercise of such privilege, a tax is levied on each

149

taxable transaction or incident, which tax is due and payable as follows:

(a) 1.a. At the rate of 5 percent of the sales price of each item or article of tangible personal property when sold at retail in this state, computed on each taxable sale for the purpose of remitting the amount of tax due the state, and including each and every retail sale.

(b) *Each occasional or isolated sale of an aircraft, boat, mobile home, or motor vehicle of a class or type which is required to be registered, licensed, titled, or documented in this state or by the United States Government shall be subject to tax at the rate provided in this paragraph. . .*

. . . . . . . . . . .

2. *This paragraph does not apply to the sale of a boat by or through a registered dealer under this chapter to a purchaser who removes such boat from this state within 10 days after the date of purchase or, when the boat is repaired or altered, within 10 days after completion of such repairs or alterations. In no event shall the boat remain in this state more than 90 days after the date of purchase. This exemption shall not be allowed unless the seller:*

a. Obtains from the purchaser within 90 days from the date of sale written proof that the purchaser licensed, registered, or documented the boat outside the state;

b. Requires the purchaser to sign an affidavit that he has read the provisions of this section; and

c. Makes the affidavit a part of his permanent record.

In the event the purchaser fails to remove the boat from this state within 10 days after purchase or, when the boat is repaired or altered, within 10 days after completion of such repairs or alterations, or permits the boat to return to this state within 6 months from the date of departure, the purchaser shall be liable for use tax on the cost price of the boat and, in addition thereto, payment of a penalty to the Department of Revenue equal to the tax payable. This penalty shall be in lieu of the penalty imposed by s. 212.12(2) and is mandatory and shall not be waived by the department.

(b) At the rate of 5 percent of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or store for use or consumption in this state."

Plaintiff's second grounds for invalidity of the assessment is the contention that the sale of "So Free" on June 29, 1984 did not

constitute a taxable privilege on the part of the State of Florida for the reason that plaintiff is not a "person" under F. S. 212.05 engaged in the "business" of selling . . . property . . . in this state. Plaintiff's complaint refers to the definition of "business" as set forth in F.S. 212.02(9) in support of his argument, however, the Court finds that the occasional sale of boats is exempted from the definition of "business" so that the effect of both statutes is that one does not have to engage in "business" as defined by those statutes in order to incur a tax from the sale of a motor vehicle or boat.

Plaintiff contends that under the wording of Florida Statute 212.05(1)(a)1.b. "So Free's" sale to plaintiff on June 29, 1984 did not trigger a taxable privilege to entitle the State of Florida to impose a tax as "So Free" was not a boat "of a class or type which is required to be registered, licensed, titled or documented" in Florida or by the federal government.

Plaintiff asserts that under federal law USC § 12102 there is no requirement for a yacht to be licensed, titled or documented as the statute is permissive and that under Florida law there is no require- ment that the "So Free" be licensed, titled or documented. Plaintiff reasons that the "So Free" need not be registered under Florida's laws because registration is an adjunct to securing an identification number under Florida's numbering system which is federally approved pursu- ant to 46 USC § 12302. All documented vessels equipped with propul- sion machinery are required to be numbered by 46 USC § 12301 and States are permitted to maintain their own numbering system only in compliance with the Federal numbering system. Plaintiff asserts that in accord with Chapter 123 of 46 USC the numbering system pertains only to undocumented vessels and, accordingly, Florida does not and cannot require registration of the "So Free". Plaintiff cites the Court to F.S. 327.15(7) wherein federally documented vessels are exempt from the necessity of obtaining Florida numbers. However, this statute also provides that there is no exemption for a federally documented vessel if it has been within the state for more than 90 days.

Thus, plaintiff contends that "So Free", a yacht under 5 tons, was therefore not required to be federally documented but because the vessel was eligible for federal documentation at the discretion of its owner and was so documented it thereby became a boat not of a "class or type" required to be documented in Florida as federally documented vessels need not be registered in Florida, accordingly, Plaintiff's conten- tion hinges on the construction of a term "of a class or type" required to be registered be given an extremely narrow interpretation by this Court. A construction limiting the tax to those vessels not eligible for

151

federal documentation that are required to be registered under Florida law. If that was the intent of the legislature, it would have been a simple enough task to so provide.

The Court finds that a more reasonable interpretation would be that the legislature intended to impose a Section 212.05 tax upon all vessels "of the class and type" required to be registered with the federal government as well as all vessels "of the class and type" required to be registered by the State.

In this regard it is well to note that the general rule is that taxing statutes are to be strictly construed in favor of the taxpayer. However, as pointed out by the State in its brief Florida Statute 212.05 is also a tax exemption statute. Exemption from a tax being in the nature of a special favor from the legislature must be strictly construed against the taxpayer. *Green v. City of Pensacola*, 126 So.2d 529 (Fla. 1973) and *Wanda Marine Co. v. Department of Revenue*, 305 So.2d 65 (Fla. 1st DCA 1974).

Plaintiff's vessel was not required by federal law to be registered but it was "of the class or type" required by Florida law to be registered and, accordingly, the transaction of June 29, 1984 constituted a taxing privilege with resultant tax liability unless properly exempted in accord with provisions made by F. S. 212.05.

At the time of sale plaintiff executed the exemption documents by the terms whereof (and as required by F. S. 212.05) he agreed that the vessel was to be removed from Florida within 10 days of completion of repairs or alterations. This plaintiff apparently did. Plaintiff, however, lost his exemption by returning to Florida with the vessel within 6 months of its original departure. By plaintiff's own admission "So Free" returned on no less than two occasions within this 6 month period, the premises considered, it is

ORDERED and ADJUDGED that the assessment of sales/use tax, penalties and interest against plaintiff, ROY W. CRONACHER, by the Department of Revenue of the State of Florida bearing the date September 19, 1985, be and the same is hereby upheld.

The relief prayed for by plaintiff's complaint is hereby denied and said complaint be and the same is hereby dismissed.

The Court reserves jurisdiction to tax costs in favor of the defendant and enter such other orders relating to the surety bond posted in this cause.

DONE and ORDERED in chambers at Key West, Monroe County, Florida this 7th day of October, 1986.